```
              UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW HAMPSHIRE
```

<u>James Daniel Hobgood</u>

    v.                                            Case No. 20-cv-156-LM

<u>Northwest Arkansas Newspapers, LLC,</u>
<u>d/b/a Arkansas Online</u>


### REPORT AND RECOMMENDATION

Plaintiff James Daniel Hobgood has sued the defendant, Northwest Arkansas Newspapers, LLC, d/b/a Arkansas Online ("Arkansas Online") for defamation.  Hobgood's complaint (Doc. No. 1) has been referred to the undersigned magistrate judge for preliminary review, pursuant to LR 4.3(d) and 28 U.S.C. § 1915(e)(2).  For the reasons that follow, the district judge should dismiss plaintiff's complaint because plaintiff has failed to state a cause of action.

### I.  Preliminary Review Standard

The magistrate judge conducts a preliminary review of complaints, like the plaintiff's, which are filed in forma pauperis.  <u>See</u> LR 4.3(d).  The magistrate judge may recommend to the district judge that one or more claims be dismissed if, among other things, the court lacks jurisdiction, a defendant is immune from the relief sought, or the complaint fails to state a claim upon which relief may be granted.  <u>See</u> 28 U.S.C. §

1915(e)(2); LR 4.3(d).  In conducting its preliminary review, the court construes pro se complaints liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  Here, the complaint fails to state a claim upon which relief may be granted.

## II.  Background[1]

In 2016, plaintiff pled guilty in federal court to cyberstalking, see 18 U.S.C. § 2261A(2), preserving his right to appeal the district court's denial of his motion to dismiss the indictment.  Complaint (Doc. No. 1) at 3; Hobgood II, 868 F.3d at 746.  He was sentenced to one year and one day in prison and ordered to pay the victim $2387.91 in restitution.  Id.

---

[1] The relevant facts set forth herein, taken as true for the purposes of preliminary review, are derived from the complaint, the Eighth Circuit Court of Appeals's affirmance of Hobgood's conviction, United States v. Hobgood, 868 F.3d 744 (8th Cir. 2017) ("Hobgood II"), and from the docket of Hobgood's criminal proceedings, U.S. v. Hobgood, Cr. No. 5:15CR50083-001 (W.D. Ark., indictment filed Oct. 28, 2015) ("Hobgood I"), and U.S. v. Hobgood, Cr. No. 5:17-cr-50024-001 (W.D. Ark., complaint filed March 6, 2017) ("Hobgood III"), of which the court takes judicial notice.  See Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 55 (1st Cir. 2006) (court in determining if complaint meets notice pleading standard may consider facts properly subject to judicial notice); see also Maher v. Hyde, 272 F.3d 83, 86 (1st Cir. 2001) (federal courts may take judicial notice of proceedings in other courts if relevant to matters at hand).

In May 2017, while Hobgood's appeal of his cyberstalking conviction was pending, Hobgood pleaded guilty to criminal contempt, in violation of 18 U.S.C. § 401(3).  See Hobgood III, Plea Agreement (Doc. No. 11) filed May 19, 2017.  The contempt proceedings stemmed from Hobgood's violation of his conditions of release pending appeal of Hobgood I.

Following both of Hobgood's convictions, prosecutors transmitted statements about the case that received media coverage.  Complaint (Doc. No. 1) at 6.  Defendant Arkansas Online, a news organization based in Fayetteville, Ark., published two items that plaintiff claims defamed him.  First, in September 2016, Arkansas Online published an article entitled "Man who sent letter claiming woman in Arkansas was stripper, escort, gets prison."  Complaint (Doc. No. 1) at 8-9.  He asserts that the accompanying article

> mindlessly copied many of the government's lies, which made me look like I had been dishonest, instead of honest.  The article also incorrectly indicated that [the target of his cyberstalking] had broken off our relationship instead of me, implying that I had done what I did because of the relationship's dissolution. This is demonstrably false. Finally, the article inaccurately portrayed that I had admitted guilt to what the government falsely alleged.

Id. at 9.

Next, following plaintiff's apprehension for violating his

conditions of release pending appeal in Hobgood II,[2] Arkansas Online published an article that, Hobgood claims, contained false information. Hobgood takes specific issue with:

> 1) a headline reading "Ongoing cyber stalking lands Virginia man jail time;
>
> 2) use of an unflattering photograph constituting an invasion of his privacy;
>
> 3) including the following first sentence: "A Virginia man was ordered jailed by a federal judge Monday for continuing to harass a woman on social media even after he had pleaded guilty to her cyber stalking."

Complaint (Doc. No. 1) at 9.

### III. Legal Analysis

Under New Hampshire law, "[t]o establish defamation, there must be evidence that a defendant . . . publish[ed] . . . a false and defamatory statement of fact about the plaintiff to a third party." Independent Mech. Contractors, Inc. v. Gordon T. Burke & Sons, Inc., 635 A.2d 487, 492 (N.H. 1993) (citing

---

[2] At the end of Hobgood's hearing for violating his release conditions pending appeal, the court requested that the United States Attorney's office prosecute Hobgood for criminal contempt, the proceeding which eventually became Hobgood III. See Hobgood I, Order Revoking Bond and Initiating Criminal Contempt Proceedings (Doc. No. 61) (Order entered Jan. 25, 2017).

4

Restatement (Second) of Torts § 558 (1977)).[3]  The court will address each instance of alleged defamation separately.

A. September 2016 publication

Plaintiff alleges that the September 2016 Arkansas Online article was "demonstrably false." Complaint (Doc. No. 1) at 9. This assertion of falsity, however, is undercut by the facts underlying Hobgood's 2016 guilty plea.  The court in Hobgood II described the facts to which Hobgood stipulated as part of his plea:

> Hobgood and the government stipulated to the following facts. In September 2014, KB met Hobgood and had a brief romantic relationship with him in Richmond, Virginia. KB began rebuffing Hobgood's advances, and in January 2015, she moved to Arkansas. KB alleges that Hobgood, still living in Richmond, began contacting her via e-mail, Facebook messages, and third-party text messages to demand that she apologize to him in person for her treatment of him. KB did not do so.
>
> KB alleges that Hobgood then created publicly accessible social media accounts in which he portrayed KB as an exotic dancer and prostitute. Hobgood also sent letters to KB's employer through the mail and over the Internet claiming that KB was an exotic dancer and prostitute. Hobgood contacted KB and KB's family by e-mail, stating that unless she apologized to him, he would continue to make these representations. According to KB, Hobgood's actions caused her substantial emotional distress and

---

[3] The court need not decide at this stage of the case whether New Hampshire law applies to this case.  It is beyond serious dispute that a plaintiff in a defamation suit must, at a minimum, allege that a defendant's allegedly defamatory statement was false, regardless of the forum.

5

contributed to her need for short-term hospitalization.

Law enforcement investigators eventually contacted Hobgood about his conduct. <u>Hobgood admitted sending KB, her family, and her employer communications by e-mail, telephone, and mail, in which he stated that KB was an exotic dancer. Hobgood told investigators that he would not stop contacting KB until he caused her to lose her job, or caused her to "repent" for the unspecified wrong that she committed against him. Investigators also were able to corroborate that Hobgood was responsible for the publicly accessible social media accounts that portrayed KB as an exotic dancer and prostitute.</u>

Hobgood II, 868 F.3d at 746 (emphasis added). The court's description echoes the language in Hobgood's signed plea agreement, in which he concedes that "the Government could prove [those] facts beyond a reasonable doubt." Hobgood I, Cr. No. 5:15CR50083-001, Plea Agreement (ECF Doc. No. 27) (W.D. Ark. April 13, 2016) ("Plea Agreement"). Given the specific content of his signed plea agreement, Hobgood's defamation claim based on the September 2016 article is barred by the doctrine of judicial estoppel.

"Judicial estoppel is an equitable doctrine that prevents a litigant from taking a litigation position that is inconsistent with a litigation position successfully asserted by him in an earlier phase of the same case or in an earlier court proceeding." RFF Family P'ship, LP v. Ross, 814 F.3d 520, 527 (1st Cir. 2016). Three conditions must be satisfied to impose judicial estoppel: (1) the earlier and later litigation

positions of the party to be estopped must be clearly inconsistent; (2) that party must have persuaded the court to adopt and rely on the earlier position; and (3) that party must stand to gain an unfair advantage if the new position is adopted by the court. Id. at 528. "Courts typically invoke judicial estoppel when a litigant tries to play fast and loose with the courts." Id. at 527-28.

Here, all of the criteria our Court of Appeals set forth in RFF Family P'ship are satisfied. First, the statement that plaintiff now claims is false is directly contradicted by the facts he admitted the government could prove beyond a reasonable doubt in his criminal case. Next, the court in his criminal case undoubtedly relied on plaintiff's prior position in accepting the plea agreement which, by its terms, was not binding on the court. Plea Agreement ¶ 24. Finally, plaintiff, by essentially repudiating his signed plea agreement, would gain an unfair advantage if he was permitted to prosecute a defamation lawsuit against a defendant whose challenged statement is, according to the public record, accurate. See Robinson v. Globe Newspaper Corp., 26 F. Supp. 2d 195, 200 (D. Me. 1998) (applying judicial estoppel to plaintiff who pleaded guilty in prior case and later sued newspaper for defamation).

B.  January 2017 Publication

Plaintiff asserts that neither the headline nor the text of the stories following his 2017 apprehension was factually accurate.  The public record flatly contradicts this claim.  As described above, Hobgood was ordered to jail by a federal judge for continuing to harass a woman on social media during the pendency of his appeal after his prior guilty plea in Hobgood I.

The transcript of his revocation hearing (conducted the day before the publication at issue) contains testimony that Hobgood, using a Facebook account he created under a fictitious name – his father's name spelled backwards – posted derogatory comments about KB on a Facebook page created by KB's wedding photographer.  He also attached links to web pages he created that further denigrated KB's character.  See Hobgood II, Transcript of Bond Revocation Hearing (Doc. No. 62), (Jan. 23, 2017).

Not only does the transcript of the proceedings demonstrate that the challenged publication was not inaccurate, but Hobgood's subsequent guilty plea reinforces that finding.  In his signed guilty plea, Hobgood agreed that the following facts are "true and undisputed":

> d.  On October 10, 2016, [investigators for the U.S. Department of Homeland Security were] contacted by [K.B.] and advised that after her wedding, on or about October 8, 2016, her photographer posted pictures of the ceremony on her Facebook and Instagram

8

business profile. Shortly after uploading the images, a user profile utilizing the name "Semaj Dranoel" commented, "Yeah, 'love."' and then attached a link directing to "The Dirty" website of walmart-executive-[KB]-leads-double-life. An additional post by "Semaj Dranoel", captured by the Victim, on the photographer's account commented, "Maybe she'll be more faithful now and stop lying about being raped and such. IDK, I doubt it." and then again attached a link to "The Dirty" website of walmart-executive-[KB]-leads-double-life.

    e. A continued review of the "Semaj Dranoel" user profile by H.S.I. found several other posts on or about October 10, 2016 referencing the victim's wedding photos. Those comments and postings included additional references to [KB]'s wedding, including Mr. Hobgood's predictions the marriage would fail due to [KB's] lack of faithfulness, as well as links to The Dirty website. Postings were also made by Mr. Hobgood to [KB]' s grandmother's Facebook page including comments similar to those mentioned above.

    f. On November 9, 2016, H.S.I. received documents subpoenaed from Facebook which showed the "Semaj Dranoel" profile was registered to Comcast Cable out of Richmond, Virginia during the time periods of the offending posts.

    g. On December 7, 2016, H.S.I. was again contacted by the Victim and alerted to additional online postings, publicly available through the "phantomforjustice.blogspot.com". There were two stories or blogs posted on this site entitled "The Injustice of Our Justice System" and "The Case Against [KB] (and her accomplices)". Both stories or biogs were written as an interview piece where HOBGOOD provided quoted material of his ongoing criminal proceedings, the government officials involved and alleged lies and manipulation portrayed by the Victim. These entries were, in fact written by Mr. Hobgood, under the pseudonym, Randall Stephens, a character from the movie, "The Shawshank Redemption."  Through its investigation, H.S.I. identified that these postings had been made through Comcast, and the LP. address located at the address in Manakin Sabot,

9

>    Virginia where HOBGOOD lived at the time of the
>    postings.

Hobgood III, Plea Agreement (Doc. No. 11), (May 9, 2017).

Hobgood did not appeal his contempt conviction.[4]

As with the defamation claim based on the 2016 publication, application of judicial estoppel to Hobgood's own sworn admissions foreclose him from making arguments to the contrary in a subsequent defamation suit.[5]  RFF Family P'ship, supra; Robinson, supra.

### IV. Conclusion

For the reasons set forth herein, the undersigned recommends that the district judge assigned to this case dismiss it for failure to state a claim upon which relief can be granted.  Moreover, given the undisputed public record, there is no realistic possibility that amending the complaint would alter this outcome.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed.

---

[4]The district court rejected Hobgood's habeas petition seeking to overturn both convictions.  See Hobgood I, Opinion and Order (Doc. No. 73) (Oct. 30, 2018).

[5]There is no legal authority for Hobgood's apparent claim that the publication of "an unflattering picture" accompanying a story about an arrest can support a defamation claim.

10

R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

                                                       _____
                                                       Andrea K. Johnstone
                                                       United States Magistrate Judge

March 3, 2020

cc:  James Daniel Hobgood

11